UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL GRIMES,<br><br>    Plaintiff,<br><br>    v.<br><br>J. BEARD, et al.,<br><br>    Defendants. | NO. EDCV 15-2267-ODW (AGR)<br><br>AMENDED REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE |

The court submits this Amended Report and Recommendation to the Honorable Otis D. Wright II, United States District Judge, pursuant to 28 U.S.C. § 636 and General Order No. 05-07 of the United States District Court for the Central District of California. For the reasons set forth below, the magistrate judge recommends that Defendants' motion to dismiss the complaint be granted with leave to amend.

**I.**

**SUMMARY OF PROCEEDINGS**

On November 3, 2015, Plaintiff, a state prisoner proceeding *pro se* and *in forma pauperis*, filed a complaint under 42 U.S.C. § 1983. Plaintiff sued the following defendants in their individual and official capacities: J. Beard, former Secretary of the California Department of Corrections and Rehabilitation ("CDCR");[1] and two prison officials at the California Institution for Men ("CIM"), correctional officer P. Cholakyan and correctional lieutenant T. Palmer. (Compl. at 3.) He concurrently filed a motion for a preliminary injunction, which was denied.

On January 29, 2016, Defendants filed a motion to dismiss the Complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. Plaintiff filed an opposition and Defendants filed a reply. A Report and Recommendation issued on June 17, 2016. Plaintiff filed a motion for clarification, which the court construed as objections to the Report. On July 11, 2016, Plaintiff filed a motion that the court has also considered as objections.[2] The court issues this Amended Report and Recommendation to address Plaintiff's objections and considers his potential claims as a request for leave to amend his complaint.

**II.**

**ALLEGATIONS IN COMPLAINT**

On October 3, 2015, correctional officer Cholakyan requested Plaintiff to provide a urine sample under the Mandatory Random Urinalysis Program. (Compl. at 5A, Ex. A at 3.) Plaintiff requires a catheter to urinate, and he told Cholakyan that he needed medical staff to insert the catheter in order to provide a

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, S. Kernan, the current CDCR Secretary, is substituted for Beard in his official capacity. (*See* Reply at 1 & n.1.)

[2] The motion is the subject of a separate briefing order.

urine sample. (Compl. at 5A, Ex. A at 2, 3, 7.) Cholakyan took Plaintiff to the on-duty nurse, who refused to administer a catheter to Plaintiff, stating that he self-catheterizes several times a day and is able to do it himself. (Compl. at 5A-5B, Ex. A at 4.) The nurse offered to provide Plaintiff with a new, sterile catheter. (Compl., Ex. A at 4, 7.) Plaintiff refused to provide a urine sample unless the catheter was inserted by medical staff. (Compl. at 5, Ex. A at 4, 6, 7.)

On October 5, 2015, Cholakyan issued a Rules Violation Report charging Plaintiff with refusal to provide a urine sample, a disciplinary violation. (Compl., Ex. A at 3-4.) The disciplinary hearing took place on October 14, 2015, and was conducted by lieutenant Palmer, the assigned senior hearing officer. (Compl., Ex. A 5.) Plaintiff admitted that he self-inserts a catheter "at least 4 times a day," but maintained that medical staff should insert it when the procedure is for the purpose of a urinalysis drug test. (*Id.* at 6.) Palmer found Petitioner guilty of refusing to provide a urine sample, and assessed him 30 days loss of behavioral/work credits, 30 days loss of yard privileges, and 90 days loss of visiting privileges. (*Id.* at 7-8.) Plaintiff was also ordered to undergo a monthly drug test for a year, and was required to attend Alcoholics Anonymous/Narcotics Anonymous meetings or another substance abuse education and treatment program, if available at his institution. (*Id.* at 8.)

Plaintiff contends that punishing him for refusing to self-administer a catheter violates his due process and Eighth Amendment rights, and subjects him to "false imprisonment." (Compl. at 5, 6.) He also complains of the requirement to attend Alcoholics Anonymous classes, stating that they have a religious component he finds objectionable.[3] (*Id.*) He requests compensatory damages and an order directing the CDCR to stop all disciplinary actions against him,

---

[3] Arguably Plaintiff is trying to assert a claim under the First Amendment's Establishment Clause against Palmer. However, Plaintiff does not expressly raise a First Amendment claim and Defendants have not addressed it.

restore his time credits, and stop all urinalysis testing until this case is resolved. (*Id.* at 6.)

## III.
## DISCUSSION

### A. Fed. R. Civ. P. 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (citations omitted).

[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.* at 678; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) (citation omitted).

As a general rule, the court must limit its review to the operative complaint and may not consider facts presented in briefs or extrinsic evidence. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). Materials submitted as part of the complaint are not "outside" the complaint and may be considered. *Id.*; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19

4

(9th Cir. 1990). Even if documents are not physically attached to the complaint, they may be considered if their authenticity is uncontested and the complaint necessarily relies on them. *Lee,* 250 F.3d at 688.

A *pro se* complaint is to be liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). Before dismissing a *pro se* civil rights complaint for failure to state a claim, the plaintiff should be given a statement of the complaint's deficiencies and an opportunity to cure them unless it is clear the deficiencies cannot be cured by amendment. *Eldridge v. Block*, 832 F.2d 1132, 1135-36 (9th Cir. 1987).

**B. Analysis**

Defendants have moved to dismiss the Complaint on the following grounds: (1) Plaintiff's claims are barred by the doctrine of *Heck v. Humphrey*, 512 U.S. 477 (1994); (2) Plaintiff fails to state cognizable Eighth Amendment, due process, and false imprisonment claims; and (3) Defendants are entitled to qualified immunity. (Mot. at 2-3, 4-11.)

**1. *Heck v. Humphrey***

To obtain relief for "harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck*, 512 U.S. at 486-87 (footnote omitted); *see also Muhammad v. Close*, 540 U.S. 749, 751 (2004) (*Heck* holds that "where success in a prisoner's § 1983 damages action would implicitly question the validity of conviction or duration of sentence, the litigant must first achieve favorable termination of his available state, or federal habeas, opportunities to challenge the underlying conviction or sentence"). The favorable-termination requirement of *Heck* applies when a prisoner raises § 1983 claims challenging the validity of a

5

disciplinary conviction resulting in the loss of good-time credits. *Edwards v. Balisok*, 520 U.S. 641, 646-48 (1997); *see Muhammad*, 540 U.S. at 751 (*Edwards* "applied *Heck* in the circumstances of a § 1983 action claiming damages and equitable relief for a procedural defect in a prison's administrative process, where the administrative action taken against the plaintiff could affect credits toward release based on good time served"). An inmate cannot challenge his disciplinary proceeding in a § 1983 action if the asserted defect, if established, would "necessarily imply the invalidity of the deprivation of his good-time credits." *Edwards*, 520 U.S. at 646.

Plaintiff was assessed a 30-day loss of time credits as a result of his disciplinary conviction. (Compl. at 6, Ex. A at 8.) He contends that requiring him to self-administer a catheter without medical assistance and punishing him for his refusal to do so violates his Eighth Amendment and due process rights. (Compl. at 5-5A.) A decision in his favor would necessarily imply the invalidity of his disciplinary conviction for refusing to provide a urine sample and the credit forfeiture imposed as a penalty. Under *Heck* and *Edwards*, Plaintiff cannot pursue his claims until he has invalidated his credit forfeiture. *See Edwards*, 520 U.S. at 646-48 (*Heck* barred due process challenge to disciplinary conviction when prisoner was assessed a credit forfeiture); *Foster v. McDonald*, 346 F. App'x 217, 219 (9th Cir. 2009) (*Heck* barred Eighth Amendment challenge to double-celling order because success on claim would imply invalidity of disciplinary conviction for refusing to share cell and resulting credit forfeiture).

In his Opposition, Plaintiff states that he is withdrawing his request for reinstatement of his time credits and now seeks only monetary damages. (Opp'n at 15.) But *Heck* and *Edwards* bar Plaintiff's claim even if he does not seek restoration of his lost time credits. *See Edwards*, 520 U.S. at 644-45 (applying *Heck* bar even though plaintiff did not seek restoration of forfeited good-time credits). Plaintiff cannot show an entitlement to damages without demonstrating

6

the invalidity of his disciplinary conviction, which necessarily implies the invalidity of all disciplinary sanctions imposed as a result of the conviction. Accordingly, Plaintiff's claims should be dismissed as barred under *Heck* and *Edwards*.

### 2. Eighth Amendment

Defendants contend that apart from the *Heck* bar, the Complaint does not state a plausible Eighth Amendment claim. (Mot. at 6-8.)

An actionable Eighth Amendment violation has both an objective and a subjective component. *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004). To satisfy the objective component, the deprivation must be objectively "sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). To satisfy the subjective component, the prison official must act with deliberate indifference to inmate health or safety. *Farmer*, 511 U.S. at 834. The official must know of and disregard an excessive risk to inmate health and safety; he or she must not only be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, but must actually draw the inference. *Id.* at 837. "If a person should have been aware of the risk, but was not, then the person has not violated the Eighth Amendment, no matter how severe the risk." *Gibson v. County of Washoe, Nev.*, 290 F.3d 1175, 1188 (2002).

In the medical context, prison officials violate the Eighth Amendment if they are deliberately indifferent to a prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "A medical need is serious is failure to treat it will result in significant injury or the unnecessary and wanton infliction of pain." *Peralta v. Dillard*, 744 F.3d 1076, 1081 (9th Cir. 2014) (citation and quotation marks omitted), *cert. denied*, 135 S. Ct. 946 (2015). "A prison official is deliberately indifferent to that need if he "knows of and disregards an excessive risk to inmate health." *Id.* at 1082 (citation and quotation marks omitted).

Plaintiff contends that insertion of a catheter is a medical procedure that

should be performed by a medical professional, and that self-administration of a catheter is painful and may cause urinary tract infections and possibly other damage. (Compl. at 5, 6.) He acknowledges that he has elected to self-administer a catheter on a daily basis despite knowing these risks, but contends that he should not be required to assume these risks for the purpose of providing a urine sample for non-medical reasons. (*Id.* at 6*; see* Opp'n at 3-4, 7.) In essence, Plaintiff views the medical risks of self-administering a catheter as acceptable for purposes of his daily bodily functions, but excessive for purposes of giving a urine sample for a drug test that can be used against him.

Given his voluntary daily self-administration of a catheter, Plaintiff has not alleged facts showing that doing so on a single occasion for purposes of urinalysis drug testing -- or pursuant to the monthly drug test subsequently imposed as a sanction -- poses a significant risk of harm to his health.[4] Nor has he alleged facts showing that Defendants knew of and deliberately ignored a significant risk to his health. *See Farmer*, 511 U.S. at 837; *Peralta,* 744 F.3d at 1082. When Plaintiff explained that he uses a catheter, Cholakyan promptly took him to see the on-duty nurse, who refused to administer a catheter, told Cholakyan that Plaintiff routinely does so himself, and offered Plaintiff a new, sterile catheter to use. (Compl. at 5A-5B, Ex. A at 4.) In light of the nurse's statements and Plaintiff's own admission at the disciplinary hearing that he self-administers a catheter at least four times a day (Compl., Ex. A at 6), Defendants would have no reason to view self-administration of a catheter as harmful to Plaintiff's health. *See Hinkley v. Warner*, 616 F. App'x 255, 255-56 (9th Cir. 2015) (affirming dismissal of Eighth Amendment claim when

---

[4] Plaintiff asserts in his Opposition that on one occasion he hurt himself when inserting a catheter to give a urine sample for one of the monthly drug tests mandated as a sanction after his disciplinary conviction. (Opp'n at 7-8, 13.) He says that he told Cholakyan that he had hurt himself and Cholakyan said he was lying. (*Id.*) This allegation is not in the complaint and cannot be considered in determining whether the current complaint states an Eighth Amendment claim.

inmate did not allege facts showing that defendants knew of and disregarded substantial risk of harm to him by demanding he submit to random urinalysis drug test); *Johnson v. Rink*, No. 3:14-cv-1531-GPC-JMA, 2016 WL 2745412, at *3-*4 (S.D. Cal. May 11, 2016) (inmate asserting Eighth Amendment claim based on conviction for refusal to give urine sample failed to allege deliberate indifference when complaint and attachments did not show that defendants knew at time of disciplinary proceedings that his psychotropic medication impeded his ability to urinate).

Plaintiff alleges that officials at his previous prison, the Richard J. Donovan Correctional Facility, told him that Donovan policy requires medical staff to administer catheters for purposes of urinalysis drug testing even for self-catheterizing inmates, in order to avoid liability if the inmate hurts himself. (Compl. at 5C.) The Donovan disciplinary report attached to the Complaint does not support Plaintiff's allegation. At Donovan, Plaintiff was acquitted of refusal to provide a urine sample because he had not been provided with a catheter for that purpose and his weekly assignment of catheters was insufficient. (Compl., Ex. D at 3.) At CIM, the nurse offered Plaintiff a new, sterile catheter to use in giving the urine sample. (Compl., Ex. A at 4, 7.)

Accordingly, Plaintiff has not alleged a plausible Eighth Amendment claim based on his disciplinary conviction for refusing to give a urine sample.

### 3. Due Process and False Imprisonment

Defendants contend that apart from the *Heck* bar, Plaintiff's due process and false imprisonment claims fail because the Complaint does not give sufficient notice of the nature of the purported constitutional violations. (Mot. at 8-9.) *See* Fed. R. Civ. P. 8 (a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"); *Twombly*, 550 U.S. at 555 (Rule 8(a) requires complaint to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests") (internal citation omitted).

In the context of prison disciplinary proceedings implicating the loss of good time credits, due process entitles a prisoner to the following procedural protections: (1) 24-hour advance written notice of the disciplinary charge; (2) an impartial hearing body; (3) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in the prisoner's defense; (4) assistance from staff or another inmate if the prisoner is illiterate or the issues are complex; and (5) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action. *Wolff v. McDonnell*, 418 U.S. 539, 563–572 (1974). In addition, due process requires that the disciplinary decision must be supported by "some evidence." *Superintendent, etc. v. Hill*, 472 U.S. 445, 455 (1984).

It is unclear to the court whether the appeals process has concluded based on Plaintiff's motion filed on July 11, 2016 and its attachments. It is unclear to the court what Plaintiff claims is the factual basis for his due process and false imprisonment claims. For example, it may be that Plaintiff alleges that the prison improperly rejected his appeal in addition to challenging the evidentiary basis of the disciplinary proceeding. It is recommended that Defendants' motion to dismiss be granted with leave to amend.

**4. Leave to Amend**

Because Plaintiff may be able to cure the deficiencies of his claims through additional allegations, he should be given an opportunity to attempt to do so. *See Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995).

In addition to the claims discussed above, Plaintiff appears to be attempting to state Fourth Amendment[5] and First Amendment claims. The court addresses

---

[5] In hindsight, the complaint alleged that "what freedom I have the officer at this prison took from me." (Compl. at 6.) Plaintiff's motion for clarification, which this court construed as objections, expressly questioned the prison's "legal

10

these potential claims below.

### a. Fourth Amendment Claims

Although not expressly mentioned in the complaint, Plaintiff appears to be attempting to state a Fourth Amendment claim challenging the prison disciplinary proceeding based on his refusal to self catheterize in order to produce a urine sample for drug testing and his insistence that medical staff perform the catheterization.

The Fourth Amendment provides that the Government shall not violate "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."[6] The Fourteenth Amendment extends this constitutional guarantee to the states.

In *Thompson v. Souza*, 111 F.3d 694 (9th Cir. 1997), the Ninth Circuit assumed *arguendo* that prisoners retained cognizable rights of privacy under the Fourth Amendment and balanced "'the significant and legitimate security interests of the institution against the privacy interests of the inmates.'" *Id.* at 702 (applying test in *Bell v. Wolfish*, 441 U.S. 520, 560 (1979)). The court found that the nonrandom urinalysis test at issue, which did not involve catheterization, was reasonably related to legitimate penological interests and did not violate the Fourth Amendment. *Id.* at 702-03. However, the urinalysis test in *Thompson* did not involve catheterization.

To the extent Plaintiff intends to pursue a Fourth Amendment claim, he should expressly allege it in an amended complaint. The court cautions that it appears that this type of Fourth Amendment claim would necessarily call into

---

right" to require Plaintiff to use a "medical procedure" on himself (self catheterization) for a nonmedical reason (drug testing), as opposed to having medical staff perform the catheterization. (Dkt. No. 33 at 2-3.)

[6] Plaintiff mentioned a Fifth Amendment right not to incriminate himself, but a urine sample is not testimonial. *United States v. Edmo*, 140 F.3d 1289, 1292-93 (9th Cir. 1998).

11

question the lawfulness of the result of Plaintiff's disciplinary proceeding, and Plaintiff has not alleged that his disciplinary proceeding or sentence has been reversed on appeal, expunged by executive order, declared invalid by a state tribunal or called into question by a federal court's issuance of a writ of habeas corpus.[7] *Heck*, 512 U.S. at 485; *see Balisok*, 520 U.S. at 646 (*Heck* bars claim when alleged defect in disciplinary proceedings would necessarily imply invalidity of deprivation of good time credits).

### b. First Amendment Claim

As noted above in footnote 3, Plaintiff may be attempting to assert a claim under the First Amendment against Palmer for compelled participation in religion-based drug treatment programs. *See Inouye v. Kemna*, 504 F.3d 705, 713-14 (9th Cir. 2007) (parolee). To the extent Plaintiff intends to pursue a First Amendment claim, he should expressly allege it in an amended complaint.

## IV.

## RECOMMENDATION

For the reasons discussed above, it is recommended that the district court issue an order (1) accepting this Report and Recommendation; (2) granting Defendants' motion to dismiss; and (3) granting Plaintiff leave to file a First Amended Complaint due within 30 days of the district court's order.

*/s/ Alicia G. Rosenberg*

DATED: July 21, 2016

ALICIA G. ROSENBERG
United States Magistrate Judge

---

[7] The Ninth Circuit has granted a petition for rehearing en banc in a case that involves, among other things, the question of whether a challenge to prison disciplinary proceedings resulting in loss of good time credits by a prisoner with a life sentence is cognizable in habeas. *Nettles v. Grounds*, 810 F.3d 1138 (9th Cir. 2016). Plaintiff does not claim to have been sentenced to life imprisonment.